## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **DAVID W. PENNINGTON,** **NANCY J. THORNER, PAUL M.** **TAIT and JAMES P. ECONOMOS,** On Behalf of Themselves and All Others Similarly Situated, | ) ) ) ) ) ) | |
| Plaintiffs | ) ) | |
| vs. | ) ) | No. _____ Judge _____ |
| **ZIONSOLUTIONS LLC,** A Delaware Limited Liability Company, and **BANK OF NEW YORK MELLON,** a New York Chartered Bank, | ) ) ) ) ) | |
| Defendants | ) ) | |

## COMPLAINT

Plaintiffs, **David W. Pennington, Nancy J. Thorner, Paul M. Tait** and **James P. Economos ("Plaintiffs")**, on behalf of themselves and all others similarly situated, by their attorneys, for their Complaint against Defendants ZionSolutions LLC (**"ZionSolutions"**) and Bank of New York Mellon (**"BNY Mellon"**), state as follows:

## PARTIES

1.     Plaintiff **David W. Pennington** is a resident of Fox Lake, Illinois.

2.     Plaintiff **Nancy J. Thorner** is a resident of Lake Bluff, Illinois.

3.     Plaintiff **Paul M. Tait** is a resident of Mount Prospect, Illinois

4.     Plaintiff **James P. Economos** is a resident of Bartlett, Illinois.

5. Defendant **ZionSolutions** is a Delaware limited liability company with its principal place of business in Salt Lake City, Utah.

6. Defendant **BNY Mellon** is a New York chartered bank with its principal place of business in New York, New York.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action under 28 United States Code Section 1332 in that the Plaintiffs are residents of Illinois and Defendants are residents of states other than Illinois, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue is proper in this district under 28 United States Code Section 1391(a)(2) in that a substantial part of the events or omissions giving rise to the claims alleged herein occurred, and a substantial part of property that is the subject of this action is situated in, this district.

## FACTS

9. Plaintiffs are electric customers of Commonwealth Edison Company ("Com Ed").

10. Between approximately 1998 and 2006, Plaintiffs and other customers of Com Ed collectively were required by law to pay hundreds of millions of dollars into certain trust funds established under 220 ILCS 5/8-508.1 (the "Trust Funds") relating to the future nuclear decommissioning of the Zion nuclear power plant in Zion, Illinois (the "Zion Plant").

11. The balance in the Trust Funds is currently in excess of $700 Million.

2

12.    Under 220 ILCS 5/8-508.1, the Trust Funds are held in trust for the benefit of :

(i)   the electric utility that established the Trusts, to the extent the electric utility is liable for, and the funds are used to pay, the necessary and reasonable costs for nuclear decommissioning of the Zion Plant (and certain other conditions are met); and

(ii)   Com Ed's customers, who are entitled to receive (a) the balance of the Trust Funds in excess of the foregoing amount, and (b) certain excess amounts in the Trust Funds if the electric utility transfers the Plant to a third party who assumes the obligation for nuclear decommissioning and the electric utility's liability for such future nuclear decommissioning costs is reduced.

13.    Specifically, 220 ILCS 5/8-508.1(c)(3) states, in relevant part, as follows:

(3) The following restrictions shall apply in regard to administration of each decommissioning trust:

(i) Distributions may be made from a nuclear decommissioning trust only to satisfy the liabilities of the public utility for nuclear decommissioning costs relating to the nuclear power plant for which the decommissioning fund was established and to pay administrative costs, income taxes and other incidental expenses of the trust.

(ii) Any assets in a nuclear decommissioning trust that exceed the amount **necessary** to pay the nuclear decommissioning costs[1] of the nuclear power plant for which the decommissioning fund was established shall be refunded to the public utility that established the fund for the purpose of refunds or credits, as soon as practicable, to the utility's customers. (**emphasis added**)

---

[1] "Decommissioning Costs" are defined in 220 ILCS 5/8-508.1(a).

(iii) In the event a public utility sells or otherwise disposes of its direct ownership interest, or any part thereof, in a nuclear power plant with respect to which a nuclear decommissioning fund has been established, the assets of the fund shall be distributed to the public utility to the extent of the reductions in its liability for future decommissioning after taking into account the liabilities of the public utility for future decommissioning of such nuclear power plant and the liabilities that have been assumed by another entity. The public utility shall, as soon as practicable, provide refunds or credits to its customers representing the full amount of the reductions in its liability for future decommissioning.

14.     The Zion Plant was built by Com Ed, at ratepayers' expense, in approximately 1974, and was originally licensed and expected to operate until at least 2012. Com Ed had the right to apply for extensions of the operating license for several decades beyond 2012.

15.     In approximately 1998, however, Com Ed suspended all operations at the Plant. Com Ed stated at the time that it was suspending operation of the plant for "economic" and "market" reasons.

16.     In approximately 2001, Com Ed transferred ownership of the Zion Plant, together with the rest of its large operating nuclear generation fleet, to Exelon Generation Company.

17.     In connection with the transfer of the Zion Plant to Exelon Generation Company in 2001, Exelon Generation Company assumed the obligation for the future nuclear decommissioning of the Zion Plant at the end of its useful life.

18.     From 2001 to September 1, 2010, Exelon Generation Company did not attempt to resume operations of the Zion Plant, or seek to apply for a license extension beyond 2012, or seek to sell the plant to a third party who might operate it or hold it for future operation.

During this period the price of electricity for Exelon Generation Company's other nuclear generation units increased significantly.

19.    On September 1, 2010, Exelon Generation Company transferred ownership of the Zion Plant to ZionSolutions, and required that ZionSolutions permanently dismantle and decommission the Zion Plant. In connection with the transfer, ZionSolutions assumed substantially all liabilities for decommissioning the Zion Plant (with limited exceptions).

20.    In connection with the September 2010 ownership transfer, ZionSolutions also purported to assume direct control of the Trust Funds.

21.    ZionSolutions thereafter purported to appoint Defendant BNY Mellon to act as trustee of the Trust Funds, and BNY Mellon has taken custody of the Trust Funds.

22.    To Plaintiffs' knowledge, ZionSolutions had no legal authority to appoint a trustee for the Trust Funds.

23.    BNY Mellon is currently purporting to act as trustee of the Trust Funds pursuant to a written agreement with ZionSolutions and under terms defined by ZionSolutions. Under those terms, BNY Mellon is directed to hold and invest the Trust Funds as directed by ZionSolutions, and to pay them to ZionSolutions upon ZionSolutions' presentation of a signed form which ZionSolutions prescribed, and upon ZionSolutions' unilateral assertion that payments are legally due to it (and the passage of 30 days' notice without objection from the Nuclear Regulatory Commission).

24.    Under the terms of the agreement, BNY Mellon is required to make such payments to ZionSolutions without any duty to independently inquire as to the accuracy of any assertions made by ZionSolutions regarding the amounts claimed to be due or of any facts or

conclusions set forth in the forms submitted by ZionSolutions, or to make any independent inquiry regarding whether the Funds withdrawn are for necessary and reasonable nuclear decommissioning costs legally required to be paid from the Trust Funds. In fact, under the agreement, BNY Mellon expressly disavows any duty to make any independent inquiry regarding the accuracy of any factual or legal assertions by ZionSolutions regarding ZionSolutions' purported claims to payments from the Trust Fund.

25. Since September 1, 2010, ZionSolutions has withdrawn over 10 million dollars from the Trust Funds, purportedly for claimed costs and profits associated with the dismantling of the Zion Plant.

26. ZionSolutions has stated that it intends to withdraw hundreds of millions of dollars more from the Trust Funds, and possibly withdraw the entirety of the Trust Funds, over the next several years, purportedly for:

(i) claimed costs associated with the dismantling of the Zion Plant;

(ii) claimed profits for itself in the range of 15% to 20%;

(iii) tens of millions of dollars in charges for deferred operating or other non-nuclear-decommissioning costs, including but not limited to charges for preparing regularly produced spent fuel for storage or disposal; and

(iv) unspecified amounts associated with the cost of its procurement of a $200 million letter of credit to secure its performance of its legal obligations with respect to the Zion Plant.

27. No qualified person or entity has been appointed to act as a trustee with respect to the Trust Funds to fully protect the rights of Com Ed's customers as beneficiaries of the Trust Funds under applicable law.

6

28.     No qualified trustee is reviewing the withdrawals from the Trust Funds to conclusively determine whether they meet all of the requirements for payment under the terms of Illinois law establishing and governing the Trust Funds and other applicable law.

29.     No qualified trustee is reviewing the dismantling and decommissioning plan or the withdrawals to determine or assure that the project represents and is being performed at the lowest reasonable costs to reasonably protect the interests of Com Ed's customers in the Trust Funds.

30.     ZionSolutions' principals have stated that the reason it acquired ownership of the Zion Plant was to obtain "direct access to [Zion's] decommissioning trust funds" and thereby "avoid ... several levels" of review of ZionSolutions' intended withdrawals from the Trust Funds.[2]

31.     Some or all of the payments made or to be made to ZionSolutions from the Trust Funds are not for necessary and reasonable nuclear decommissioning costs at the Zion Plant, and do not comply with the law establishing the Trust Funds. These payments include but are not limited to payments for (1) self-dealing claimed profits estimated to be in the range of 15% to 20%, (2) tens of millions of dollars in charges for deferred operating or other non-nuclear-decommissioning costs, including but not limited to charges for preparing regularly produced spent fuel for storage or disposal, (3) unspecified charges for a $200 million letter of credit procured in connection with the transfer of the Zion Plant from Exelon Generation to ZionSolutions, which would not have been procured or required had Exelon Generation retained ownership of the Plant, and (4) other potentially excessive, unnecessary or otherwise non-qualifying charges for activities purportedly associated with the Zion Plant.

_____

[2] EnergySolutions, Inc. Annual Report on Form 10K for Fiscal Year Ending December 31, 2009, page 8.

32.     ZionSolutions has not demonstrated its legal right to make all of the withdrawals it has made or all of the additional withdrawals it intends to attempt to make from the Trust Funds.

33.     At the time the Zion Plant was transferred to ZionSolutions in 2010 the Zion Plant was not required by law to be decommissioned for at least forty years. The Zion Plant has not been shown to be at the end of its useful economic life. Neither Exelon Generation Company nor ZionSolutions has made any attempt to market or sell the Zion Plant to potential purchasers who would operate it or maintain it for operation in the future.

34.     Plaintiffs also allege on information and belief that Exelon Generation Company transferred the Zion Plant to ZionSolutions and required that it be dismantled, rather than attempt to sell it or preserve it for operation in the future, in order to limit the potential supply of electricity in the marketplace and thereby maintain higher market-clearing prices for electricity produced by Exelon Generation Company's other remaining nuclear generating units, in violation of federal law.[3] Upon information and belief, Plaintiffs allege that the accelerated destruction of the Zion Plant which ZionSolutions seeks to fund from the Trust Funds is in furtherance of that unlawful objective.

---

[3] The U. S. Department of Justice has described this type of prohibited conduct as follows:

> [In certain electricity auction markets] a firm owning or controlling generating units may find it profitable to physically or economically withhold one or more of its units, reducing supply of electricity to the market and thereby increasing the market-clearing price. Although the firm may reduce revenue on the units it withholds, it may more than make up for that loss through the gains in revenue on its units still supplying electricity to the market.

Comments of the Department of Justice dated November 15, 2004, FERC Docket No. RM04-14-000.

35.     At least one senior engineer of ZionSolutions knew that Exelon Generation Company wished to keep the Zion Plant from operating in order to limit electric supply in the market area and thereby maintain higher market-clearing prices and profits for electricity from Exelon's remaining nuclear power plants in Illinois. Approximately a week before ZionSolutions acquired the Zion Plant in September of 2010, that ZionSolutions' senior engineer stated in an industry website that:

> [K]eeping Zion open (or opening it, today) ... would push down the market price for power in the region by creating more ample supply in general, and specifically by reducing the amount of time gas plants have to operate (which results in a high marginal, market price for power). Exelon's profits are maximized if there is just enough non-gas generation so that gas has to be used for the last increment of power most or all hours of the day. That sets a high market price (based on the last, most expensive power increment) which results in Exelon making a huge profit on its remaining, nuclear generation. Exelon has been working towards this "ideal" balance in the region for a while now, by adding only gas. And by closing Zion.....
>
> [By the way], I agree that [the statement that Zion is at the] "end of its useful life" [is] ridiculous. Nuclear plants last 60, or perhaps 100 years.

36.     Com Ed customers paid billions of dollars for the Zion Plant, and paid hundreds of millions of dollars for the decommissioning Trust Funds for the Zion Plant, and now Exelon and ZionSolutions are taking steps to destroy the Plant and keep it from potentially being sold to a third party so that Exelon Generation Company can potentially increase its market prices and profits for all of its other remaining nuclear generating units, and for consumers.

37.     At least a portion of the Trust Funds are required to be paid or credited to Com Ed's customers under 220 ILCS 5/8-508.1(c)(3). The ownership of the Zion Plant has been transferred and the liability of the public utility referenced in 220 ILCS 5/8-508.1(c)(3) for future nuclear decommissioning charges has been reduced. In addition, the assets in the Trust

Funds exceed the amount necessary to pay the nuclear decommissioning costs of the Zion Plant for which the public utility referenced in 220 ILCS 5/8-508.1(c)(3) is liable.

38.     All conditions precedent to the maintenance of this action have occurred or have been waived.

## COUNT 1

### (Action to Enjoin and Recover Payments to ZionSolutions)

39.     Plaintiffs hereby incorporate all preceding paragraphs of this Complaint as though fully set forth in this Count 1.

40.     Some or all of the payments withdrawn or sought to be withdrawn from the Trust Funds by ZionSolutions violate Illinois law governing the Trust Funds.

41.     Some or all of such payments violate and are contrary to 220 ILCS 5/8-508.1(c)(3).

42.     Some or all of such payments are not for necessary and reasonable nuclear decommissioning costs of the Zion Plant properly payable to ZionSolutions, as required by law.

43.     Some or all of such payments violate and are contrary to the requirement under the law that trust assets be administered in a manner which reasonably and prudently balances the interests of Com Ed's customers in the Trusts with the interests of any other beneficiaries of the Trusts.

44.     Some or all of such payments appear to be in knowing furtherance of a scheme by one supplier – Exelon Generation Company – to eliminate a potentially economic source of electric supply in order to increase the market-clearing prices for its remaining sources of electric supply, in violation of federal law prohibiting such conduct, including Section 222 of

the Federal Power Act (16 U.S.C. 824v) and Order 670 of the Federal Energy Regulatory Commission ( 18 CFR 1c).

45.     Plaintiffs are entitled to an injunction enjoining some or all of such payments, and directing the return of such payments already made.

## COUNT 2

### (Action to Appoint Trustee)

46.     Plaintiffs incorporate all preceding paragraphs of this Complaint as though fully set forth in this Count 2.

47.     Courts are authorized to appoint a qualified trustee for a trust where no qualified trustee has been validly appointed to act as trustee, or where a validly appointed trustee has not agreed to fully protect all the interests of all beneficiaries under the trust.

48.     No qualified trustee has been validly appointed with respect to the Trust Funds, nor validly appointed to protect all the interests of all beneficiaries under the trusts. BNY Mellon is acting as a custodian who has agreed to pay the funds to ZionSolutions upon ZionSolutions' assertion that such payments are due (and the passage of 30 days' notice to the Nuclear Regulatory Commission without objection), without exercising any independent duty of inquiry, and has otherwise disclaimed many fiduciary duties with regard to the Trust Funds to protect the rights of the parties thereto under the law establishing the Trust Funds and other applicable law.

49.     Plaintiffs are entitled to the appointment by the court of a qualified trustee of the Trust Funds who will accept and agree to discharge all legal duties to protect all

beneficiaries' interests in the Trust Funds in accordance with the law establishing the Trust Funds and other applicable law.

50.     Without limiting the foregoing, Plaintiffs are entitled to the appointment of a trustee who will accept the fiduciary duty to, *inter alia*, (i) withhold payments from the Trust Funds unless and until it is conclusively shown that such payments are required to be paid under the law establishing the trusts and other applicable law, including where appropriate withholding payments unless and until it is shown that such payments are for necessary and reasonable nuclear decommissioning costs payable in accordance with law, and (ii) manage and disburse the Trust Funds in a manner that reasonably balances the interests of Com Ed's customers in the Trusts with the interests of any other beneficiaries of the Trusts, as required by and in accordance with law.

51.     In addition, Plaintiffs are entitled to the appointment of a trustee whose duties under the law establishing the trusts and other applicable law are not limited or modified by separate agreement with one entity claiming a beneficial interest in the trusts.

## COUNT 3

### (Action to Require Payments (or Credits) From Trust Funds for Com Ed's Customers Under 220 ILCS 5/8-508.1)

52.     Plaintiffs hereby incorporate all preceding paragraphs of this Complaint as though fully set forth in this Count 3.

53.     Pursuant to 220 ILCS 5/8-508.1, Com Ed's customers are entitled to receive payments (or credits) in the amount of at least some of the Trust Funds.

54.     Plaintiffs are entitled to an injunction directing that at least a portion of the assets in the Trust Funds be paid (or credited) to Com Ed's customers pursuant to 220 ILCS 5/8-508.1.

## COUNT 4

### (Action for Accounting by BNY Mellon)

55.     Plaintiffs incorporate all preceding paragraphs of this Complaint as though fully set forth in this Count 4.

56.     As a de facto custodian of the Trust Funds BNY Mellon is a fiduciary and is required to account for all trust assets and expenditures.

57.     Plaintiffs demand that the current custodian promptly prepare and file a full accounting and provide full disclosure of all assets in and expenditures from the Trust Funds.

## CLASS ALLEGATIONS

58.     Plaintiffs bring this action on their own behalf and additionally, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a class (the "Class") of all Com Ed customers entitled to benefit from the provisions of 220 ILCS 5/8-508.1 requiring that the balance of the Trust Funds be paid or credited to them.

59.     Excluded from the Class are Defendants, any parent, subsidiary, or affiliate of any Defendant; any entity in which any Defendant has or had a controlling interest, or which any Defendant otherwise controls or controlled; and any officer, director, employee, legal representative, predecessor, successor, or assign of any Defendant.

60.     This action is brought as a class action for the following reasons:

    a.      The Class consists of at least tens of thousands of persons, and is

therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable.

    b.  There are questions of law or fact common to each class member that predominate over any questions affecting only individual members, including but not limited to: (i) the legality of the payments made or to be made to Defendants from the Trust Funds and (ii) the proper appointment of a trustee for the Trust Funds.

    c.  The claims asserted by Plaintiffs are typical of the claims of the members of the Class.

    d.  Plaintiffs will fairly and adequately protect the interests of the Class, and Plaintiffs have retained attorneys experienced in complex litigation.

    e.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy, for at least the following reasons:

      i.  Absent a class action, Class members as a practical matter will be unable to obtain protection of their rights in the Trust Funds and redress for Defendants' conduct and the Class members may be unable to recover the potentially millions of dollars which may be improperly withdrawn from or diminished in the Trust Funds.

      ii.  It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions.

      iii.  When the common issues have been adjudicated, the Court will be able to determine the claims of all members of the Class;

      iv.  A class action will permit an orderly and expeditious administration of the Class claims, foster economies of time, effort, and expense, and ensure uniformity of decisions; and

v.     The lawsuit presents no difficulties that would unduly impede its management by the Court as a class action.

f.     Defendants have acted or failed to act on grounds generally applicable to the Class members, making class-wide injunctive and corresponding declaratory relief appropriate.

g.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for all parties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand that judgment be entered in this action for relief as follows:

(a) enjoining any payments from the Trust Funds made in violation of the law under which the trusts were established or of the rights of the beneficiaries under such law, or made in furtherance of a violation of law;

(b) directing ZionSolutions to return (or pay as damages) any payments made to it from the Trust Funds described in (a) above, with interest;

(c) appointing a qualified trustee for the Trust Funds, who shall agree to accept and discharge the fiduciary duty to manage and administer the Trust Funds to protect the interests of all beneficiaries in accordance with the law establishing the Trusts and other applicable law;

(d) enjoining any payments from the Trust Funds until such trustee is validly appointed and approves same in accordance with law;

(e)  directing that the Trust Funds be paid or credited to Com Ed's customers to the extent they are legally entitled to same;

(f)  directing that BNY Mellon provide a full accounting with respect to the Trust Funds;

(g)  awarding costs of suit, attorneys fees and interest as appropriate;

(h)  certifying this action as a class action, naming Plaintiffs as class representatives, and appointing the undersigned as class counsel; and

(i)  granting such other relief as may be proper in this action.

A TRIAL BY JURY IS DEMANDED ON ALL COUNTS SO TRIABLE.

Respectfully submitted,

    /S/ Daniel J. Sponseller

Daniel J. Sponseller
Law Office of Daniel J. Sponseller
409 Broad Street, Suite 200
Sewickley, Pennsylvania 15143
412.741.4422 (Phone)
412.741.4433 (fax)
dsponseller@sponsellerlawfirm.com

Raymond E. Stachnik
Raymond E. Stachnik & Associates LTD
303 W. Madison Avenue, Suite 1800
Chicago, Illinois 60606
312.334.9606 (phone)
312.334.9607 (fax)
res@stachniklaw.com
Atty. No. 43914
(Local Counsel Pursuant to L.R. 83.15)

Attorneys for Plaintiffs

Dated: 7/12/2011

17