UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID W. PENNINGTON, NANCY J. THORNER, PAUL M. TAIT and JAMES P. ECONOMOS, On Behalf of Themselves and All Others Similarly Situated,<br><br>　　　　　Plaintiffs<br><br>vs.<br><br>ZIONSOLUTIONS LLC, and BANK OF NEW YORK MELLON,<br><br>　　　　　Defendants | No. 11-CV-04754<br>Hon. Joan H. Lefkow |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR STRIKE

### BACKGROUND[1]

Plaintiffs, customers of Commonwealth Edison, have brought this action to enforce their rights under two decommissioning trusts established by Com Ed under 220 ILCS 5/8-508.1 relating to the Zion nuclear power plant. The trusts were established two decades ago and were funded by payments from Com Ed ratepayers in accordance with 220 ILCS 5/8-508.1 The balance in the trusts is approximately $700 million. (Complaint ¶¶ 10-11).

Subpart (c)(3) of 220 ILCS 5/8-508.1 provides that Com Ed ratepayers have an interest in the trusts in that (1) trust assets in excess of necessary and reasonable nuclear decommissioning costs for the Zion plant are required to be credited (or refunded) back to Com Ed's ratepayers

---

[1] The facts contained in this section are taken from the Complaint.

(see (c)(3)(ii)) [2], and (2) trust assets are automatically required to be returned (or credited) to Com Ed's ratepayers if at any time the Zion Plant is transferred and Com Ed's liability for nuclear decommissioning costs is reduced (see (c)(3)(iii)). (See also Complaint ¶¶ 12-13).

Defendant ZionSolutions has recently acquired direct ownership of the Zion plant and withdrawn over $10 million from the trusts. It plans to withdraw several hundred million dollars more (and possibly all the funds) from the trusts over the next several years. ZionSolutions has publicly stated that the reason it acquired ownership of the Zion Plant was to obtain "direct access to [Zion's] decommissioning trust funds" and thereby "avoid ... several levels" of review of ZionSolutions' withdrawals from the Trust Funds. (Complaint ¶¶ 19, 25, 26 and 30).

No entity has been validly appointed to act as trustee for the trusts who has agreed to protect all the interests of all the beneficiaries under the trusts, including Com Ed ratepayers, and to make sure that the withdrawals are made only in accordance with the requirements of the Illinois law under which the trusts were established. Defendant BNY Mellon is acting as a custodian under an agreement with ZionSolutions in which BNY Mellon is required to pay ZionSolutions the amounts ZionSolutions unilaterally asserts is due to it (after passage of 30 days' notice without objection from the NRC). Under that agreement, BNY Mellon must make such payments without any duty to inquire as to the accuracy of ZionSolutions assertions that it is entitled to payment, and in fact BNY Mellon expressly disavows any duty to independently inquire regarding ZionSolutions' assertions. (Complaint ¶¶ 23-25; 27-29; 47-50).

---

[2] 220 ILCS 5/8-508.1(c)(3)(ii) requires that "all amounts that exceed the amount *necessary* to pay nuclear decommissioning costs" are required to be returned to ratepayers, and 220 ILCS5/8-508.1(a)(2) defines "decommissioning costs" as "all *reasonable* costs and expenses incurred in connection with" nuclear decommissioning.

Plaintiffs have learned that ZionSolutions' recent and planned withdrawals from the trust funds include (1) a self-declared profit of 15% to 20% for ZionSolutions (Complaint ¶ 31); (ii) ZionSolutions' costs of obtaining a $200 million letter of credit, which is not a cost to decommission the Zion nuclear plant, but rather is a cost voluntarily incurred by ZionSolutions in order to acquire direct ownership of the Zion Plant and NRC license for itself, apparently in the hope it could avoid greater scrutiny of its withdrawals from the trust funds under Illinois law (Complaint ¶¶ 31, 30); and (iii) ZionSolutions' attempt to withdraw tens of millions of dollars to unnecessarily move spent fuel from one location to another and to store it on site for Exelon Generation, which are not nuclear decommissioning costs but are unnecessary fuel management expenses (Complaint ¶ 31). Plaintiffs do not know what other withdrawals ZionSolutions has made or plans to make and for that reason have requested an accounting.

Plaintiffs' Complaint contains four counts. Count I requests an injunction enjoining improper payments made to ZionSolutions in violation of 220 ILCS5/8-508.1(c)(3) and directing the return of improper payments already made. (Complaint ¶¶ 12-13, 25-26, 31-36, 39-45). Count II invokes the court's equitable duty to appoint a qualified trustee for a trust where none has been properly appointed to protect all beneficiaries. (Complaint ¶¶ 20-22, 27-29, 46-51). Count III requests relief under 220 ILCS5/8-508.1(c)(3)(iii) which requires the return (or credit) of trust assets to customers to the extent a nuclear power plant is transferred from the public utility which established the trusts and its liability for nuclear decommissioning costs has been reduced. (Complaint ¶¶ 16-19, 37, 52-54). Count IV seeks an accounting of the trust assets from BNY Mellon Bank. (Complaint ¶¶ 55-57).

As discussed below, none of the grounds raised by Defendants for dismissal of the Complaint under Rule 12(b)(6) have merit.

## ARGUMENT

Defendants' motion to dismiss should be denied for the following reasons.

I. <u>The Zion Trusts Were Established Under And Are Governed by 220 ILCS5/8-508.1</u>

220 ILCS 5/8-508.1, the statute on which Plaintiffs rely, governs the Zion Trust Funds. The Zion Trust Funds were established and funded by Com Ed pursuant to the requirements of subparagraphs (b) [3] and (c)(1) and (2) [4] of 220 ILCS5/8-508.1, which required Com Ed to

---

[3] 220 ILCS5/8-508.1(b) provides:

> (b) By 90 days after the effective date of this amendatory Act of 1988, ... every public utility that owns or operates, in whole or in part, a nuclear power plant shall:
>
> (1) establish 2 decommissioning trusts... and shall hold the decommissioning funds established by the public utility for all nuclear power plants pursuant to subsection (b)(2) of this Section;
>
> (2) establish 2 decommissioning funds for each such plant, each of which shall be held for a plant as a separate account in a decommissioning trust; and
>
> (3) designate an independent trustee, subject to the approval of the Commission, to administer each of the decommissioning trusts.

[4] 220 ILCS5/8-508.1(c)(1) and (c)(2) provide:

> (c) The 2 decommissioning trusts shall be known as the "tax qualified" decommissioning trust and the "non-tax qualified" decommissioning trust respectively. Each trust shall be established and maintained as follows:
>
> (1) The "tax qualified" trust shall be established and maintained in accordance with Section 468A of the Internal Revenue Code ... and shall be funded by the public utility for each such power plant through annual payments by the public utility that shall not exceed the maximum amount allowable as a deduction for federal income tax purposes...
>
> (2) The "non-tax qualified" decommissioning trust shall be funded by the public utility for each such power plant through annual payments by the public utility that shall consist of the difference between the total amounts of decommissioning expenses collected after the effective date of this [Act] through rates and charges from the public utility's customers as provided by the Commission minus the amounts contributed to the "tax qualified" trust as provided by subsection (c)(1) of this Section ....

establish and fund two decommissioning trusts for each nuclear unit at the Zion Plant and to "designate an independent trustee, subject to the approval of the Commission, to administer each of the decommissioning trusts" (*Id.*, Subparagraph (b)(3)).

Subparagraph (c)(3) of 220 ILCS5/8-508.1 specifically sets forth " the ... restrictions which shall apply in regard to the administration of each decommissioning trust." [5] These restrictions include the following provisions which are intended to benefit Com Ed ratepayers and protect their interests in the trust funds:

> (1) Trusts assets in excess of necessary and reasonable nuclear decommissioning costs are required to be credited (or refunded) back to Com Ed's ratepayers. (see (c)(3)(ii));

---

[5] 220 ILCS5/8-508.1(c)(3) specifically provides:

> (3) The following **restrictions shall apply in regard to administration of each decommissioning trust**:
>
> (i) Distributions **may be made from a nuclear decommissioning trust only to satisfy the liabilities of the public utility for nuclear decommissioning costs** relating to the nuclear power plant for which the decommissioning fund was established and to pay administrative costs, income taxes and other incidental expenses of the trust.
>
> (ii) Any assets in a nuclear decommissioning trust **that exceed the amount necessary to pay the nuclear decommissioning costs of the nuclear power plant** for which the decommissioning fund was established **shall be refunded to the public utility that established the fund for the purpose of refunds or credits, as soon as practicable, to the utility's customers.**
>
> (iii) **In the event a public utility sells or otherwise disposes of its direct ownership interest, or any part thereof, in a nuclear power plant with respect to which a nuclear decommissioning fund has been established, the assets of the fund shall be distributed to the public utility to the extent of the reductions in its liability for future decommissioning** after taking into account the liabilities of the public utility for future decommissioning of such nuclear power plant and the liabilities that have been assumed by another entity. **The public utility shall, as soon as practicable, provide refunds or credits to its customers** representing the full amount of the reductions in its liability for future decommissioning. (All emphasis in this brief is added unless otherwise indicated).

(2) Trust assets are automatically required to be returned (or credited) to Com Ed's ratepayers if at any time the Zion Plant is transferred and Com Ed's liability for nuclear decommissioning costs is reduced. (see (c)(3)(iii)); and

(3) Trust assets may only be used to pay necessary and reasonable nuclear decommissioning costs for which the public utility that established them is liable. (see (c)(3)(i))). (See Complaint ¶¶ 12 and 13; 31, 41 and 42).

The fact that ZionSolutions -- a recently established Utah corporation -- is not an Illinois "public utility" does not render these statutory restrictions on the administration of the decommissioning trusts no longer applicable. ZionSolutions can not, by its status, unilaterally change ( and render nugatory) terms of the decommissioning trusts previously established. ZionSolutions' assertion that it can withdraw millions of dollars from the Zion Trusts, without complying with the Illinois law under which the trusts were established and governed, simply reinforces the importance of this legal action.

II.     As Beneficiaries, Plaintiffs Are Entitled to Enforce The Trusts

Defendants themselves acknowledge that "Under Illinois trust law, beneficiaries of trusts have rights to enforce their terms." (Defendants Memo 20). This is a well established principle. (*Giagnorio v. Torkelson Trust*, 292 Ill. App. 3d 318, 323-324 ( 2d Dist. 1997 ) ( a trust beneficiary should have the right to bring such actions as are "necessary to protect his possible eventual interest, *i.e.*, protect and preserve the trust *res*.")

While it is not necessary to imply a "private right of action" here, it should be noted that plaintiffs' causes of action for violation of the express statutory terms of the trusts intended for

6

their benefit meet the four "requirements" for a private cause of action under the *Fisher v. Lexington Health Care, Inc.*, 188 Ill.2d 455, 460 (1999) decision cited in Defendants Memo at page 17: (1) Plaintiffs as a class are intended beneficiaries of the statutory provisions limiting the use of the trust funds by others and providing that the balance be returned to ratepayers. (2) Those provisions were designed to prevent illegal reduction of the trust fund balances in violation of the provisions of the statute. (3) This claim by ratepayers to protect those interests is consistent with the underlying purpose of those particular statutory provisions. (4) In the absence of allowing this action by the beneficiaries, the class would be without an adequate remedy, as no other party has the same interest and incentive to pursue the protection of their beneficiary rights.

By attempting to bar all customer beneficiaries from suing to enforce their interests, ZionSolutions seeks -- in yet another way -- to gut Illinois law protecting customers' interests in the trust funds.

III. <u>Plaintiffs Have Not Failed to Exhaust Administrative Remedies</u>

No statutory or case authority holds either that (i) the Interstate Commerce Commission has exclusive jurisdiction over actions to enforce beneficiaries' rights under trusts established under 220 ILCS5/8-508.1 or (ii) that defendants are "required to exhaust an administrative remedy" before bringing this action. Defendants' reliance on *Commonwealth Edison Co.*, 332 Ill. App. 3d at 1045-47 is misplaced, in that the Court there did not even address the administration of a decommissioning trust fund under 220 ILCS5/8-**508.1**. The cited case says nothing about the ICC's jurisdiction, if any, over the application and enforcement of the statutory requirements governing the administration of decommissioning trusts once established and

funded under section 220 ILCS5/8-508.1(c) (3). And the case does not hold that "in the first instance, challenges to the administration of a decommissioning trust fund must be brought before the ICC." (Defendants Memo 19).

Plaintiffs agree with Defendants that the appointment of a trustee must be *approved* by the ICC.[6] (Defendants Memo 19). However, Defendants cite no authority holding that this requirement (i) grants the ICC any independent authority to *appoint* an independent trustee in the first instance where no qualified trustee has otherwise been validly appointed or (ii) deprives courts of equity of their undisputed right to appoint a trustee of a trust in the first instance where none has properly been appointed.[7]

IV. <u>Defendants' Assertion that Plaintiffs Have No Beneficial Interest in the Trusts is Without Merit</u>

Plaintiffs were and are clearly beneficiaries under the Illinois law pursuant to which the Trusts were established (long before ZionSolutions came on the scene) and which expressly govern this situation. No subsequent agreement executed by ZionSolutions can unilaterally change this fact.

Defendants assertion that "Plaintiffs do not identify any of the actual terms of the trusts they are purporting to enforce as beneficiaries" (Defendants Memo 20) is incorrect. Plaintiff's identify the terms of the trusts in the decommissioning trust statute which benefit Com Ed customers and which they are seeking to enforce in, *inter alia*, Paragraphs 12 and 13; 31, 37, 41,

---

[6] See 220 ILCS5/8-508.1(b)(3).

[7] See *Golstein v. Handley*, 390 Ill. 118, 125 (Ill. 1945)( "it is elementary" that where a trustee has not been designated courts of equity "will appoint the trustee for carrying out the trust." (Citing cases)); *In re Estate of Wasson*, 117 Ill. App. 3d 368, 371-372 ( 5th Dist. 1983) ("It is well established that a court of equity possesses very broad discretion in the appointment of successor trustees."(Citing cases)).

8

42 and 53, and as explained at pages 5-6 above (i.e., 220 ILCS5/8-508.1(c)(3)(i), (ii) and (iii).) Defendants simply ignore these provisions and allegations.

V. <u>Plaintiff's Request for Refunds or Credits in Count III of the Complaint Is Appropriate</u>

220 ILCS 5/8-508.1(c)(3)(iii) provides for an immediate return (or credit) of funds to ratepayers (through Com Ed) upon the transfer of title to the Zion plant where the original public utility's liability for decommissioning is reduced after such transfer. Specifically, 220 ILCS 5/8-508.1(c)(3)(iii) (quoted in Complaint ¶ 13) provides as follows :

> (iii) In the event a public utility sells or otherwise disposes of its direct ownership interest, or any part thereof, in a nuclear power plant with respect to which a nuclear decommissioning fund has been established, **the assets of the fund shall be distributed to the public utility to the extent of the reductions in its liability for future decommissioning** after taking into account the liabilities of the public utility for future decommissioning of such nuclear power plant and the liabilities that have been assumed by another entity. **The public utility shall, as soon as practicable, provide refunds or credits to its customers representing the full amount of the reductions in its liability for future decommissioning.**

The Complaint alleges that ownership of the Zion plant was transferred to Ex Gen, who in turn transferred the plant to ZionSolutions, and that ZionSolutions assumed substantially all the obligations for nuclear decommissioning liability. (Complaint ¶¶ 16, 17, 19, 37.) Under the above statutory provision, which provide for an immediate return or credit of funds to ratepayers (through Com Ed) upon the transfer of the plant to the extent the original public utility's liability for decommissioning has been reduced, plaintiffs are entitled to an immediate return of funds from the Trust Funds to the extent of such reduction.

The Defendants' citation to NRC regulations to attempt to prevent enforcement of Illinois law 220 ILCS 5/8-508.1(c)(3)(iii) requiring payment or credit of trust funds to ratepayers is unavailing.

Contrary to Defendants' assertion, the NRC regulations do not require as a matter of federal law that "no assets in a decommissioning trust may be ...returned to customers until after decommissioning is complete." (Defendants Memo 21). Rather, 10 CFR 75(h)(1)(iv) simply requires that, *if* a nuclear licensee wishes to rely on the claimed existence of a *trust fund* ( as opposed to other alternative methods which are also acceptable to the NRC) to satisfy its obligation of showing adequate security for future decommissioning funding, that licensee is directed to include "in the terms of the arrangements governing the trust ... that " [d]isbursements ... are restricted to decommissioning expenses ... until final decommissioning has been completed." In fact, Illinois law under which the Zion Trusts were established expressly provides that the funds can be ( and in fact must be) disbursed earlier upon transfer of the plant under the conditions stated above, and defendants have no power or authority to unilaterally change that Illinois law. [8]

Finally, Defendants broad claim that "allowing Com Ed customers to collect trust assets [to which they may be legally entitled under the law establishing the trusts] before decommissioning is completed would put the whole decommissioning process at risk" (Defendants Memo 22) is simply an assertion of fact, outside the Complaint, which Plaintiffs dispute.

---

[8] Similarly, 10 CFR 50. 82(a)(8)(i)(A) does not require as a matter of federal law that "no assets in a decommissioning trust may be ...returned to customers until after decommissioning is complete." (Defendants' Memorandum at 21). Rather, 10 CFR 50. 82(a)(8)(i)(A) by its terms only regulates nuclear "licensees" and limits such *licensee's* ability to use decommissioning trust funds. 10 CFR 50. 82 provides that "(a) *For power reactor licensees*-- ... (8)(i) Decommissioning trust funds may be *used by licensees* if [ certain requirements are met]."

VI. <u>Plaintiffs Have Adequately Plead "What Payments From the Trust Funds to ZionSolutions Are Unlawful and Why"</u>

Defendants assertion that Plaintiffs have failed to allege a plausible claim in Count I under the pleading standards *of Bell Atlantic Corp. v Twombly*, 550 U.S. 544(2007), (Defendants Memo I.F. 22-24) is without merit. In making this assertion Defendants ignore almost all of the operative allegations of the Complaint, such as:

(1) the allegation that three specifically identified payments are neither reasonable nor necessary nuclear decommissioning costs (Complaint ¶¶ 26 and 31) as is required by 220 ILCS 5/8-508.1(c)(ii) (Complaint ¶¶ 12, 13, 42);

(2) the allegations that the accelerated decommissioning costs themselves are not necessary and reasonable as is required by 220 ILCS 5/8-508.1(c) (Complaint ¶¶ 12 and 13) since the Zion Plant

> (a) has not been shown to be at the end of its useful economic life (Complaint ¶¶ 33, 35);
>
> (b) is not required to be decommissioned for at least another 40 years (*Id.*); and
>
> (c) is being decommissioned (rather than operated or marketed for sale or preserved for potential future operation) not because it needs to be decommissioned, but rather in order to intentionally limit the potential supply of electricity in Illinois in order to maintain higher market-clearing prices for electricity from other generating plants (which is also a violation of federal law) (Complaint ¶¶ 33,34,35,36 and 44));

(3) the allegations that some or all of the payments to ZionSolutions violate 220 ILCS5/8-508.1(c)(3) (Complaint ¶¶39, 41) and are not for necessary and reasonable nuclear decommissioning costs as required by Illinois law (Complaint ¶ 42); and

(4) the allegations that the payments from the trust for accelerated decommissioning appear to be in furtherance of a scheme to violate specifically-identified federal law by intentionally destroying supply sources in order to maintain higher market-clearing prices for electricity and are therefore prohibited on grounds of furthering an illegal purpose (Complaint ¶¶ 33,34,35,36 and 44).

Plaintiffs have met their pleading requirement for stating claims in the Complaint.

Moreover, Defendants' assertion that the three payments identified in Paragraph 31 of the Complaint were reasonable and necessary nuclear decommissioning costs raise issues of fact.

Plaintiffs have adequately alleged that (i) ZionSolutions' self-declared profit of 15% to 20% is not a necessary and reasonable nuclear decommissioning expense (Complaint ¶ 31); (ii) ZionSolutions' costs of obtaining a $200 million letter of credit is not a cost to decommission a nuclear plant ( nor is it necessary or reasonable), but rather is a cost voluntarily incurred by ZionSolutions to acquire ownership of the Zion Plant and NRC license for itself, apparently in the hope this would allow it to bypass scrutiny of its withdrawals from the trust funds (Complaint ¶¶ 31, 30); and (iii) ZionSolutions' attempt to withdraw millions of dollars to unnecessarily move spent fuel from one location to another location on site, and to store it on site, are neither necessary nor reasonable expenses, nor are they nuclear decommissioning costs (Complaint ¶ 31).

VII. <u>Neither Plaintiffs' Request for Fees Nor their Allegations in Paragraphs 15, 18, 33 - 36 Should Be Stricken</u>.

As explained above (page 11) Paragraphs 33 through 36 are relevant to Plaintiffs' claims.

Likewise, Plaintiffs request for attorneys fees are appropriate, as attorneys fees are awardable from common funds created in a class actions under Rule 23, and in actions which preserve common benefits for beneficiaries under Illinois trusts. ( See, e.g., *Sutton v. Bernard*, 504 F.3d 688, 691-692 (7th Cir. Ill. 2007) ( in Rule 23 class actions attorneys fees are payable from "the common fund created for the class' benefit. ... Also known as the common fund doctrine, this payment scheme 'is based on the equitable notion that those who have benefited from litigation should share in its costs.'" (internal quotations omitted)); *Rennacker v. Rennacker*, 156 Ill. App. 3d 712, 716 (3d Dist. 1987) ("If a party, having a common interest in a trust fund, takes proper proceedings to save it from destruction and restore it to the purposes of

12

the trust, then that party is entitled to an award of attorney fees either out of the fund itself or by proportional contributions from those who accept the benefits of the effort." ).

## CONCLUSION

For the reasons stated above, Defendants motion to dismiss under Rule 12(b)(6) or to strike under Rule 12(f) should be denied.

                                        Respectfully submitted,

DAVID W. PENNINGTON, NANCY J. THORNER, PAUL M. TATE, JAMES P. ECONOMOS

By: /s/ Daniel J. Sponseller
      One of their attorneys

Daniel J. Sponseller
Law Office of Daniel J. Sponseller
409 Broad Street, Suite 200
Sewickley, Pennsylvania 15143
412.741.4422 (Phone)
412.741.4433 (fax)
dsponseller@sponsellerlawfirm.com

Raymond E. Stachnik
Raymond E. Stachnik & Associates LTD
303 W. Madison Avenue, Suite 1800
Chicago, Illinois 60606
312.334.9606 (phone)
312.334.9607 (fax)
res@stachniklaw.com
Atty. No. 43914

Attorneys for Plaintiffs

Dated: October 12, 2011

## **CERTIFICATE OF SERVICE**

I, Daniel J. Sponseller, an attorney, hereby certify that I filed the foregoing document electronically through the Court's ECF filing system, which will cause a true and correct copy to be served via email on all ECF-registered counsel of record, this 12th day of October, 2011.

/s/ Daniel J. Sponseller