# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAVID PENNINGTON, NANCY J. THORNER, PAUL M. TAIT, and JAMES P. ECONOMOS, on behalf of themselves and all others similarly situated )<br><br>Plaintiffs, )<br><br>vs. )<br><br>ZIONSOLUTIONS LLC, and BANK OF NEW YORK MELLON, )<br><br>Defendants. ) | No. 11 C 4754<br><br>Judge Joan H. Lefkow |

## OPINION AND ORDER

Plaintiffs, David Pennington, Nancy J. Thorner, Paul M. Tait, and James P. Economos, have filed a four-count class action complaint against defendants ZionSolutions LLC ("ZionSolutions") and Bank of New York Mellon ("BNY Mellon") to enforce their rights under two decommissioning trusts established by Commonwealth Edison ("ComEd") with respect to a nuclear power plant in Zion, Illinois. Relying on the Illinois Public Utilities Act ("IPUA"), 220 ILL. COMP. STAT. 5/1-101 *et seq.*, plaintiffs request an injunction enjoining improper payments made to ZionSolutions (count I), the appointment of a qualified trustee to manage the trusts (count II), the return or credit of the assets in the trusts (count III), and an accounting of the assets in the trusts (count IV).[1] Presently before the court is defendants' motion to dismiss

---

[1] The court has jurisdiction under 28 U.S.C. § 1332. Plaintiffs allege that they are all citizens of Illinois; that ZionSolutions is a Delaware limited liability company with its principal place of business in Utah and its sole member is a Delaware corporation with its principal place of business in Utah; and that

(continued...)

and strike plaintiffs' class action complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f). For the reasons that follow, defendants' motion to dismiss is granted.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a Rule 12(b)(6) motion to dismiss, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis, but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). Rather, it is the facts that count.

---

[1](...continued)
BNY Mellon is a New York chartered bank with its principal place of business in New York. Venue is proper in this district under 28 U.S.C. § 1391(b).

**BACKGROUND**[2]

Plaintiffs are electricity service customers of ComEd, an Illinois public utility. Between 1974 and 2001, ComEd operated a nuclear power plant in Zion, Illinois ("the Zion plant") under to two commercial reactor operating licenses issued by the United States Nuclear Regulatory Commission ("NRC"). In 1998, ComEd ceased operating the Zion plant as a nuclear power plant for economic and market reasons. ComEd began decommissioning the Zion plant, which is the process by which a nuclear power plant's facilities and equipment are dismantled, nuclear by-products are safely decontaminated and disposed of or entombed, and land is restored for beneficial use. Decommissioning is a labor-intensive operation requiring significant financial backing due to the potential risk posed by radioactive material.

To assure that adequate funds are available for decommissioning, licensees such as ComEd are required by NRC regulations to establish what are known as nuclear decommissioning trust funds. Under Illinois law, the monies used to fund the decommissioning trusts is paid by ComEd customers after the Illinois Commerce Commission ("ICC") authorizes those charges to customers. *See* 220 ILL. COMP. STAT. 5/9-201.5(a). After the completion of the decommissioning process, any excess monies from the trust funds are to be returned to ComEd customers. ComEd established two trust funds to pay for the expenses related to decommissioning the Zion plant.

---

[2] The facts in the background section are taken from plaintiffs' amended complaint and all inferences are construed in their favor. *See Virnich* v. *Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). Normally, a court cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment. *Cont'l Cas. Co.* v. *Am. Nat. Ins. Co.*, 417 F.3d 727, 731 n.2 (7th Cir. 2005). The court may take judicial notice of facts, *see Gen. Elec. Capital Corp.*, 128 F.3d at 1081, and federal regulations are amongst the material upon which a court can take judicial notice. *See* 44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed[.]"); *Denius* v. *Dunlap*, 330 F.3d 919, 926–27 (7th Cir. 2003).

In 2001, ComEd transferred the Zion plant, along with the rest of its nuclear power generation fleet, to Exelon Generation Company ("ExGen"). Because ComEd was an Illinois public utility, the sale required approval by the ICC, which ultimately approved the deal. In connection with this transfer, ExGen assumed the obligation to continue decommissioning the Zion plant. ComEd transferred the assets in the decommissioning trusts to ExGen; however, the transaction required that ComEd continue to collect from its customers through 2006 for the decommissioning trust funds. ComEd did so through 2006. In total, between 1998 and 2006, plaintiffs and other ComEd customers paid hundreds of millions of dollars into the Zion plant's decommissioning trust funds.

On September 1, 2010, ExGen transferred the Zion plant to ZionSolutions, a single purpose entity formed to decommission the Zion plant. As part of the transfer, ExGen transferred nearly all of the assets into new decommissioning trust funds established by ZionSolutions ("the Zion trusts"). ZionSolutions also assumed, with some limited exceptions,[3] the decommissioning liabilities associated with the Zion plant. ZionSolutions appointed BNY Mellon trustee of the Zion trusts, which currently have assets of more than $700 million. Pursuant to the Zion trusts' terms, any excess remaining after decommissioning will be returned

---

[3] ZionSolutions was not required to assume liabilities in connection with future decommissioning of purpose-built facilities storing spent nuclear fuel.

to ExGen,[4] which will then return any remaining assets to ComEd customers, who initially funded the decommissioning trusts.[5]

Since September 1, 2010, ZionSolutions has withdrawn over $10 million in connection with the dismantling of the Zion plant purported for claimed costs and profits associated with the project. Plaintiffs allege that ZionSolutions is using the trusts funds without any independent oversight to determine whether the expenditures meet all the requirements of Illinois laws governing trust funds. Examples of ZionSolutions's alleged improper use of the Zion funds unrelated to decommissioning include: (1) self-dealing claimed profits estimated to be in the range of 15 to 20 percent; (2) using tens of millions of dollars for deferred operating and other non-decommissioning costs including charges for preparing regularly produced spent fuel for storage or disposal; (3) making unspecified charges for a $200 million letter of credit procured in connection with the transfer of the Zion plant from ExGen to ZionSolutions; and (4) other excessive and unnecessary expenses. Plaintiffs further allege that ZionSolutions has also stated that it intends to withdraw approximately hundreds of millions of dollars, and possibly the Zion funds in their entirety.

---

[4] Before ExGen can return any excess funds from the decommissioning trusts to ComEd customers, the federal government must remove disposal of any stored nuclear fuel pursuant to a standard contract it enters with nuclear facilities and under applicable federal guidelines. *See* 10 C.F.R. § 50.82(a)(11). Decommissioning cannot be completed until the federal government performs this remediation.

[5] Although not included in the complaint, the court may consider the trust agreements in deciding the motion to dismiss as the trust agreements are referred to in the complaint and are critical to resolving the questions presented in the briefing. *See Geinosky* v. *City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (citing Fed. R. Civ. P. 10(c)).

## ANALYSIS

I.   **Counts I, II, and III (Claims to Recover Payments under the IPUA and Appoint a Trustee)**

Plaintiffs allege that the class of ComEd customers whom they represent are the beneficiaries of the Zion trusts, as the IPUA requires the appointment of a trustee to manage the trusts and eventual return of the balance of those trusts to them. Defendants argue that plaintiffs' claims should be dismissed because the IPUA is inapplicable.

The purpose of the IPUA "is to ensure that funds are available to pay the decommissioning costs when a nuclear power plant is closed." *Commonwealth Edison Co.* v. *Illinois Commerce Comm'n*, 775 N.E. 2d 113, 129, 332 Ill. App. 3d 1038, 266 Ill. Dec. 551 (2002). In connection with the decommissioning[6] of a nuclear power plant, Section 5/8-508.1 of the IPUA requires that every public utility that owns a nuclear power plant establish two decommissioning trusts holding funds to pay for decommissioning costs.[7] *See* 220 ILL. COMP.

---

[6] The IPUA defines decommissioning as "the series of activities undertaken at the time a nuclear power plant is permanently retired from service to ensure that the final entombment, decontamination, dismantlement, removal and disposal of the plant, including the plant site, and of any radioactive components and materials associated with the plant, is accomplished in compliance with all applicable Illinois and federal laws, and to ensure that such final disposition does not pose any threat to the public health and safety." 220 ILL. COMP. STAT. 5/8-508.1(a)(1).

[7] The IPUA defines decommissioning trust as "a fiduciary account in a bank or other financial institution established to hold the decommissioning funds pursuant to subsection (b)(2) of this Section for the eventual purpose of paying decommissioning costs, which shall be separate from all other accounts and assets of the public utility establishing the trust." 220 ILL. COMP. STAT. 5/8-508.1(a)(3). Decommissioning costs are further defined as "all reasonable costs and expenses incurred in connection with the entombment, decontamination, removal and disposal of the structures, systems and components of a nuclear power plant at the time of decommissioning, including all expenses to be incurred in connection with the preparation for decommissioning, such as engineering and other planning expenses, and to be incurred after the actual decommissioning occurs, such as physical security and radiation monitoring expenses, less proceeds of insurance, salvage or resale of machinery, construction equipment or apparatus the cost of which was charged as a decommissioning expense." 220 ILL. COMP. STAT. 5/8-508.1(a)(2).

STAT. 5/8-508.1(b)(1); (2). Distributions from a decommissioning trust can only be made for decommissioning costs and to pay administrative costs, income taxes and other incidental expenses of the trust. *See* 220 ILL. COMP. STAT. 5/8-508.1(c)(3)(i). Any assets in the decommissioning trust exceeding what is needed to pay for decommissioning costs are to be refunded to the public utility that established the decommissioning fund for the purpose of refunds or credits, as soon as practicable, to the customers. *See* 220 ILL. COMP. STAT. 5/8-508.1(c)(3)(ii).

The IPUA applies to public utilities, which it defines as an entity engaged in "the production, storage, transmission, sale, delivery or furnishing of heat, cold, power, electricity, water, or light." *See* 220 ILL. COMP. STAT. 5/3-105(a)(1); *see also Danville Redipage, Inc.* v. *Illinois Commerce Comm'n*, 410 N.E. 2d 328, 329, 87 Ill. App. 3d 787, 43 Ill. Dec. 328 (1980) (regulation by the ICC is not a prerequisite for an entity to be considered a public utility). ZionSolutions – a company formed for the purpose of decommissioning the Zion plant – does not fit within the IPUA's definition of a public utility. Plaintiffs argue that while ZionSolutions may not fit within the statutory definition of a public utility, the assets that fund the Zion trusts are the same assets ComEd collected to fund the decommissioning trusts and are thus still subject to the IPUA. To find otherwise, argue plaintiffs, would nullify the IPUA's statutory protections against mismanagement.

This is not necessarily so, in that NRC regulations restrict licensees such as ZionSolutions from misappropriating funds for purposes unrelated to decommissioning.[8] NRC

---

[8] In their reply brief, defendants argue that the NRC would preempt conflicting state law. Because defendants did not raise this argument in their opening brief, the court will not consider whether the NRC preempts the IPUA in this case. *See Broaddus* v. *Shields*, 665 F.3d 846, 854 (7th Cir. 2011).

regulations require (1) reasonable assurances that funds be available for decommissioning; (2) that the trust fund's assets be invested consistently with the prudent investor standard; and (3) that the withdrawal of trust funds be for expenses associated with legitimate decommissioning activities. *See* 10 C.F.R. § 50.75(a); (h)(1)(i)(B); (h)(1)(iv); § 50.82(a)(8)(i)(A). NRC regulations additionally obligate ZionSolutions to prove a detailed annual report; and the NRC has the right to review the status of a decommissioning trust at any time. *See id.* § 50.75(f)(1); (e)(2). Further, the Zion trust agreement may not be amended without prior notice to the NRC, *see id*. § 50.75(h)(1)(iii), and ZionSolutions must give notice to the NRC of any disbursement other than for decommissioning costs and other administrative costs and fees during the life of the plant. *Id.* § 50.75(h)(1)(iv). In addition, the regulations prohibit (1) investment of the trust assets in "securities or other obligations of the licensee" or companies that own or operate nuclear power reactors; and (2), with certain limited exceptions, the licensee and its affiliates from acting as investment manager or having day-to-day management direction of the funds' investments. *Id.* § 50.75(h)(1)(i)(A); (h)(1)(ii). Violation of the NRC regulations carries civil and criminal penalties. *See* 42 U.S.C. § 2273(a); (c).[9]

As a licensee, ExGen is subject to NRC regulations. *See In re Commonwealth Edison*, 2001 WL 1033288, at *31 (Ill. C.C. Feb. 21, 2001) ("As an NRC licensee, after the transfer

---

[9] The Internal Revenue Code ("Code") additionally provides incentives to ensure that funds from a tax qualified decommissioning trust are used for decommissioning expenses. *See* 220 ILL. COMP. STAT. 5/8-508.1(b)(1); (c)(1) (Illinois public utilities shall establish two decommissioning trusts one of which is tax qualified and the tax qualified trust is to be maintained in accordance with Section 468A of the Code). The Code states that payments made to a tax-qualified nuclear decommissioning trust fund are deductible and gross income from the trust fund is taxed at a rate of 20 percent. *See* 26 U.S.C. § 468A(a), (e)(2)(A)(ii). To obtain this beneficial tax treatment, Section 468A limits the use of trust funds to paying decommissioning expenses or other administrative or incident expenses and prohibits self-dealing. *See id*. at § 468A(e)(4)(A)-(B); (e)(5). Failure to comply with these conditions would result in disqualification and adverse tax consequences. *See id*. § 468A(e)(6).

[ExGen] will be subject to NRC regulations regarding decommissioning planning, record keeping and reporting. The NRC will be the federal regulatory agency responsible for determining that [ExGen] has provided reasonable assurance that funds will be available for the decommissioning process, as provided in 10 C.F.R. § 50.75 relating to financial assurance for decommissioning funding."). In approving the sale to ExGen, the ICC addressed the scenario that unfolded here and ruled that the transfer licensee would have to comply with NRC requirements:

> In the event of a subsequent transfer of a station by [ExGen] to some other proposed licensee, such new proposed licensee would also have to provide reasonable assurance of decommissioning funding pursuant to 10 C.F.R § 50.75. Based upon ComEd's recent experience concerning transferring the NRC licenses to [ExGen], this would need to be accomplished by transferring the decommissioning trusts to the new licensee or another method of providing financial assurance acceptable to the NRC.

*In re Commonwealth Edison*, 2001 WL 1033288, at *32.

That the ICC contemplated that the NRC would continue to govern in the event of a sale to an unregulated third party undercuts plaintiffs' argument that ZionSolutions's management of the Zion plant is not subject to oversight. The court concludes that the IPUA statutory framework is inapplicable to ZionSolutions as it is not a public utility under Illinois law and the NRC regulations provide adequate assurances to prevent mismanagement. *Cf. Commonwealth Edison*, 775 N.E. 2d at 131 ("[S]ection 8-508.1 [of the IPUA] requires only that public utilities establish the decommissioning trusts; it does not prohibit other business entities from maintaining or collecting money for them.").

To redress their concern that ZionSolutions is mismanaging the decommissioning trust funds, plaintiffs can petition the NRC to institute proceedings against ZionSolutions. *See*

10 C.F.R. § 2.206(a) ("Any person may file a request to institute a proceeding . . . to modify, suspend, or revoke a license, or for any other action as may be proper . . . The request must specify the action requested and set forth the facts that constitute the basis for the request."); §2.206(b) ("Within a reasonable time after a request pursuant to paragraph (a) of this section has been received, the Director of the NRC office with responsibility for the subject matter of the request shall either institute the requested proceeding in accordance with this subpart or shall advise the person who made the request in writing that no proceeding will be instituted in whole or in part, with respect to the request, and the reasons for the decision."); *see also Florida Power & Light Co.* v. *Lorion*, 470 U.S. 729, 741, 105 S. Ct. 1598, (1985) ("Congress intended to vest in the court of appeals initial subject-matter jurisdiction over challenges to Commission denials of § 2.206 petitions."); 28 U.S.C. § 2342(4). Accordingly, defendants' motion to dismiss counts I, II, and III of plaintiffs' class action complaint is granted.

## II.     Count IV (Action for Accounting)

Plaintiffs additionally argue that they are entitled to an accounting from BNY Mellon of all trust assets and expenditures. "An equitable accounting is an adjustment of the accounts of the parties and a rendering of judgment for the balance ascertained to be due." *Triple Canopy, Inc.* v. *Moore*, No. 04 C 3265, 2005 WL 1629768, at *5 (N.D. Ill. July 1, 2005). To state an equitable claim for an accounting, plaintiffs must show that they have no adequate remedy at law in addition to at least one of the following: "(1) a breach of a fiduciary relationship, (2) a need for discovery, (3) fraud, or (4) the existence of mutual accounts which are of a complex nature." *Kempner Mobile Elec., Inc.* v. *Sw. Bell Mobile Sys.*, 428 F.3d 706, 715 (7th Cir. 2005); *see also Glovaroma, Inc.* v. *Maljack Prods., Inc.*, 71 F. Supp. 2d 846, 857 (N.D. Ill. 1999) ("An

accounting claim is improper without a specific, recognized factual predicate."). Plaintiffs have not alleged that they have no adequate remedy at law warranting an accounting nor any of the other elements of the claim. Indeed, as noted *supra* in § I, plaintiffs may petition the NRC to address their concerns regarding alleged mismanagement. Their request for an accounting is thus denied. Accordingly, count IV is dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss plaintiffs' class action complaint is granted. This case is terminated.

Dated: July 29, 2013                                       ENTER:

_____
JOAN HUMPHREY LEFKOW
United States District Judge